# WHEELING.

JOHNSON'S ADM'R *et al.* v. BILLUPS *et als.*

Submitted June 29, 1883—Decided March 29, 1884.

1. If land be conveyed to a grantee subject to the support of a certain man and wife not parties to the deed during their natural lives, which support the deed declares is to be attached to the land conveyed and to be a lien upon it, this express trust will at the instance of this man and his wife be enforced by a court of equity, if the support is not furnished to them; and, if necessary, the land will be sold to furnish such support and to pay what such support was worth during the time the grantee neglected to furnish it. (p. 692.)

2. Such a trust is not void for uncertainty, as by the support of man and wife is meant such support, as is proper and suitable to them in their station in life; and the amount required to furnish such support can be ascertained with reasonable certainty. (p. 693.)

GREEN, JUDGE, furnishes the following statement of the case:

In May, 1868, Hiram W. Johnson and Jane Johnson, his wife, filed their bill in the circuit court of Putnam county, stating that on August 25, 1848, he made to his children

John W. Johnson and Elizabeth A. Johnson a deed convey-
ing to them and their heirs a tract of land on which he lived
in said county, with the understanding expressed on the face
of said deed, that the grantor and his wife, Jane Johnson,
were to live at their residence on said tract of land and have
their support out of it during their natural lives, that his son
John W. Johnson was to have the use of this farm for five
years for the half of what was raised and also he was to have
half of the income of the grantor's stock and at the end of
that time he was to return to the grantor as many cattle,
hogs and sheep, as he then had and half their increase, and
of the products of so much of the land on this farm, as was
cleared by John W. Johnson, he was to have the whole.
This deed was with general warranty, and connected with it
was a memorandum that the land and stock was to be equally
divided between the grantees. The deed was executed by
the grantors and grantees and duly recorded and a copy
thereof filed with the bill.

On February 18, 1854, John W. Johnson and his wife
conveyed to Wm. H. Smith, who had married said Elizabeth
A. Johnson, their interest in said tract of land, that is one
hundred and thirty-eight acres. The deed was duly recorded
and a copy thereof filed with the bill. On January 27,
1858, William H. Smith and his wife, formerly Elizabeth A.
Johnson, conveyed to Peter C. Hodges a tract of land ad-
joining this and the portion of said tract of land, which had
been granted to him as John W. Johnson and wife, that is
one hundred and thirty-eight acres. And the whole of this
one hundred and ninety-one acres so conveyed was on the
face of said deed to Peter C. Hodges declared to be subject to
one half of the support of the complainants, Hiram W. John-
son and Jane, his wife. This deed contained a general war-
ranty of title and was duly recorded and a copy thereof filed
with the bill. On September 9, 1860, Wm. H. Smith and
his wife, Elizabeth A. Smith, conveyed to Samuel L. Billups
the balance of said tract of land, about one hundred and
twenty-five acres, subject however to half the support of
Hiram W. Johnson and his wife during their natural lives,
which was to be attached to the land and be a lien upon the
land. And the said grantors covenanted to warrant gen-

erally the land thereby conveyed, subject however to the lien as above intended to be created. This deed was duly recorded and a copy thereof filed with the bill.

The bill charges, that the complainants are informed, that Samuel L. Billups had recently sold but not yet conveyed this one hundred and twenty-five acres of land to James Bailey and Richard W. Foster and that he had left the State with all his personal property; that Peter C. Hodges had paid for the use of the complainants to the overseers of the poor of Putnam county six hundred dollars in full satisfaction of his half of complainants' support for life; but that William H. Smith and his wife, E. A. Smith, formerly E. A. Johnson, complainants' daughter, and their grantor, S. L. Billups, had failed to provide or secure the remaining one half of the support of the complainant; that all of said parties are insolvent, and since April 1, 1863, the complainants have been left destitute, dependent upon charity and in great suffering. They claim, that they are entitled to have one half of their support enforced as a lien upon said one hundred and twenty-five acres of said land conveyed to S. L. Billups and this moiety of their support is worth one hundred and twenty dollars a year. They ask that John W. Johnson, William H. Smith and Elizabeth A., his wife, S. L. Billups, Peter C. Hodges, James Bailey and Richard W. Foster may be made defendants and required to answer this bill; that the said land conveyed to S. L. Billups be sold to repay and secure the support of complainants, the one half of their support from May 1, 1863, and one half of their support during the remainder of their natural lives, and for general reliefs.

On October 24, 1873, the death of complainant, Jane Johnson, was suggested, and on April 21, 1874, the cause was revived in the name of her administrator, William A. Love. On October 23, 1874, the following decree was entered in this cause:

"The process in this cause having been returned duly executed as to the defendants, Samuel L. Billups, Peter C. Hodges, James Bailey and Richard Foster, this day this cause came on to be heard upon the complainants' bill taken for confessed as to Peter C. Hodges, James Bailey and R.

W. Foster, and regularly set for hearing, exhibits filed there-with, the answer of defendant, S. L. Billups, and complain-ants' replication thereto, the depositions filed in the cause, and the orders and proceedings heretofore had therein, and was argued by counsel. Upon consideration of all which, the court is of opinion that the complainants are entitled to the relief prayed for. It is, therefore, adjudged, ordered and decreed that George W. Cargill, who is hereby appointed a special commissioner for that purpose, do take, state and re-port an account, showing—

"1st. When Hiram W. Johnson and Jane Johnson first ceased to derive any support or maintenance from the land in plaintiffs' bill mentioned.

"2d. What would be a fair compensation for their support each, per annum.

"3d. How much has been furnished towards the support and maintenance of the said Hiram W. and Jane Johnson by either of the defendants—when and how.

"4th. What arrangement, if any, has been made by Peter C. Hodges for the one half support of the said Hiram W. and Jane Johnson, and how much, if anything, is due from him towards their support.

"5th. How much is due from S. L. Billups for the one half support of the said Hiram W. and Jane Johnson.

"6th. Any other matter that he may deem pertinent, or either of the parties may require.

"And said commissioner is required to give twenty days' notice of the time and place of taking said account; that said notice posted on the front door of the court-house of Putnam county for twenty days shall be equivalent to personal ser-vice on all the defendants except P. C. Hodges and S. L. Billups; and the cause is continued."

On April 29, 1875, the death of the plaintiff Hiram W. Johnson was suggested and on May 4, 1876, the cause was revived in the of name Wm. A. Love.

Samuel L. Billups in his answer says that all that the com-plainants had a right to under their said deed of August 28, 1848, was a right to reside on this land and get their support out of it; that they did so till February, 1862, when he left the land and State on account of his Union sentiments and

the disturbed condition of the country; that he left the com-
plainants living on this land, and that he has never hindered
them in the use of the land, and they may still use it so far
as is necessary for their support; that if they left the place,
it was their own fault or misfortune, and since they left it
they have been supported by the county of Putnam. He
avers that their claim is no lien upon the land, and that he is
not responsible for it.

A number of depositions were taken, and the facts proven
were set out in the commissioner's report.    They proved in
addition to what is stated in the commissioner's report, that
H. W. Johnson and wife had both been very infirm for
many years before their death, he being blind and she nearly
so, and that they were for many years in a very destitute
condition receiving the indifferent attention, which they got
from the overseers of the poor of Putnam county.    The
land of Hiram W. Johnson, which he conveyed to his son
and daughter, was worth between two and three thousand
dollars, and its annual rent some two hundred dollars.    Very
little, if anything, had been furnished for the support of
complainants by any one except Peter C. Hodges, who had
furnished enough to amount to one half of their support for
life.    That furnished by any of the other defendants was
very trifling.    S. L. Billups had furnished some green
beans and some green pumpkins.    It was not supposed he
would charge for them but he did.    None of the facts we
have stated as contained in his answer were proven except
his being a Union man and leaving the State during the
war.    The report of the commissioner was as follows:

"1st. That Hiram Johnson and Jane Johnson first ceased
to derive any support or maintenance from the land in plain-
tiffs' bill mentioned in May, 1864.

"2d. Your commissioner is of opinion that the sum of
eighty-five dollars each per annum would be a fair compen-
sation for their support.

"3d. Your commissioner finds that Peter C. Hodges, the
defendant, furnished his one half of the support of the said
Hiram W. Johnson and Jane Johnson up to the month of
May, 1866, and that it was furnished in provisions, clothing,
&c., at different times, as their necessities required.    Your

commissioner also finds that the defendants, S. L. Billups, W. H. Smith and James Bailey, each contributed toward the support of the said Hiram W. Johnson and Jane Johnson, but is not able to report the amount of such contributions, nor when or how they were made. Your commissioner also finds that none of the other defendants ever contributed anything towards the support of the Johnsons.

"4th. Your commissioner would report that in August, 1868, Peter C. Hodges entered into an article with the board of overseers of the poor of Putnam county, by which the said board, in consideration of six hundred dollars, which was paid by said Hodges, released him from all liability for the support of the said Johnsons. Your commissioner would therefore report that there is nothing due from the said Peter C. Hodges toward the support of the said Hiram W. and Jane Johnson. There is no evidence before your commissioner as to the date of the death of Jane Johnson, but he is informed and believes she died in January, 1871.

"5th. Your commissioner finds and so reports that there is due from S. L. Billups for the one half support of the said Hiram W. and Jane W. Johnson, from May, 1864, to January, 1871, the time of the death of Jane Johnson, five hundred and sixty-six dollars and sixty-six cents. And there is also due from said Billups for the one half support of Hiram W. Johnson from January, 1871, to March 1, 1875, the date of this report, one hundred and eighty-seven dollars and eight cents—making a total of seven hundred and fifty-three dollars and seventy-four cents.

"All of which is respectfully reported.

"G. W. CARGILL, Commissioner."

The following decree was entered in the cause on October 27, 1876:

"This day this cause came on to be heard upon the complainants' bill, exhibits filed therewith, the separate answer of S. L. Billups and the replication thereto, the orders and proceedings heretofore had therein, and upon the report of Commissioner G. W. Cargill, and upon the argument of counsel. Upon consideration of all which, and there being no exception to said report, and the same being seen and inspected by the court, it is adjudged, ordered and decreed

that the said report be and the same is hereby confirmed, and that the said defendant, S. L. Billups, do pay to William A. Love, the administrator of Hiram W. Johnson, deceased, the sum of one hundred and eighty-seven dollars and eight cents, with interest from this date, and to the said William A. Love, administrator of Jane Johnson, deceased, the sum of five hundred and sixty-six dollars and sixty-six cents, with interest from this day. And it is further adjudged, ordered and decreed that unless the said S. L. Billups do pay the said sums as above directed within thirty days from the rising of this court, that then James W. Hoge, who is hereby appointed a special commissioner for that purpose, do, after having published the time, place and terms of sale in some newspaper published in the county of Putnam for four consecutive weeks, sell at public auction, to the highest bidder, the undivided one half of the tract of land mentioned and described in complainants' bill, belonging to the defendant, S. L. Billups, for one third of the purchase-money cash in hand, and the residue of the purchase-money in installments of six and twelve months, the purchaser or purchasers giving bonds, with good security, for the deferred installments, bearing interest from the day of sale. And it is further ordered that the said commissioner, before receiving any of the said purchase-money, do give bond in the penalty of one thousand dollars, conditioned according to law, and that he report his proceedings hereunder to the next term of this court, until which time this cause is continued."

From the two decrees entered in this cause Samuel L. Billups has taken an appeal to this Court.

*Smith & Knight* for appellants.

No appearance for appellees.

Green, Judge:

The appellants' counsel have argued this cause, as though Hiram W. Johnson's and his wife's rights were based solely on the deed made by them to their son and daughter on August 25, 1848. And it is insisted that by this deed they had but a right to live in their residence on the farm conveyed, and

to *get* for themselves a support out of the land; that they retained in the land a species of life-estate. That they had a right to live in their residence on the farm during their life is plain; but this utterly undefined right on their part to get a living out of the farm by the cultivation of an entirely undefined portion of the land seems to me to be a most strained and unnatural construction of the language of this deed. How does it consist with the express declaration that "John W. Johnson, the son, was to have the use of the farm for five years?" To my mind it is utterly irreconcilable therewith. The deed conveys the farm to the son and daughter; and the concluding claim of the deed shows, that they were to have an equal interest in it. This deed then declaring that the son was to have the use of the farm for five years "for half of what is raised" means, it seems to me, that he is to be regarded as a renter of his sister's interest in the land, paying for one half of the crops raised on her moiety of the land for the first five years; and they, the brother and sister, were to permit their parents, the grantors of the land, to reside in their residence on the farm, and were to furnish them a support during their lives. This deed containing these agreements was signed by all the parties. The deed is, it is true, obscurely written, but this seems to me to be its true interpretation, when all portions of the deed are looked at and considered together.

But its true interpretation, it seems to me, is unimportant in this case. For on September 9, 1860, part of this tract of land (one hundred and twenty-five acres) was conveyed for the consideration of five hundred dollars to the defendant, Samuel L. Billups and his heirs forever, with general warranty of title, but upon this express trust, that this one hundred and twenty-five acres so conveyed was to be "subject, however, to half the support of Hiram W. Johnson and his wife during their natural lives, and which is to be attached to the land as a lien upon the land." This language seems to me to be abundantly clear in its meaning; but as if to remove any possible doubt, it is afterwards declared, that this land is "conveyed subject however to the lien as above intended to be created." This deed creates an executed trust; and by its terms Samuel L. Billups as trustee was to hold

this land upon trust to furnish out of its proceeds half the support of Hiram W. Johnson and his wife during their natural lives.

It is said however that they were not parties to this arrangement or deed, and that S. L. Billups made no contract or arrangement with them. This is true; but what difference does this make so far as it created an express trust on this land? What is more common than for a deed of trust to provide for *cestuis que trust* not parties to the deed, and who may be utterly ignorant that the deed was made for their benefit? But who ever questioned the right of the *cestuis que trust* to enforce out of the land conveyed the moneys secured to them. The trust being an executed trust is in no manner affected by the *cestuis que trust* being no party to the deed containing it or by their being ignorant at the time of its execution that such a deed of trust was made.

It is claimed however that this trust is too vague to be executed. Wherein consists its vagueness? The persons who are to be *cestuis que trust* are expressly named, "Hiram W. Johnson and his wife"—But it is claimed that the amount, for which they are to have a lien, is utterly indefinite. It was to be an amount sufficient to provide "half of their support during their natural lives." It is claimed, that this amount cannot be determined, as it would depend entirely on their style of living and dressing. But the natural, nay the necessary, construction of this language is half the amount necessary to support them in the style of living suitable and proper to their position in life. Cannot this be ascertained? The commissioner in this case has done so with but little difficulty. He has estimated their entire support at one hundred and seventy dollars a year or eighty-five dollars for the support of each of them. And this estimate of his was so satisfactory to all persons interested, that there was no exception or objection thereto by any one. Certainly, it seems to me, the appellant cannot complain of this estimate. It was obviously put at the least possible amount, whereby they could be furnished food and clothing of the plainest and most ordinary character.

That a trust to support a grantor and his wife is sufficiently definite to be enforced has been in effect decided by

this Court in *Graham et al.* v. *Graham et al.*, 10 W. Va. 386, where the Court expressed the opinion, that in a certain conveyance of land directed to be made there should be reserved " a lien on said land in favor of Rebecca Graham for and to secure her support in a comfortable manner during her life with leave to the said Rebecca Graham to apply to the court by petition or bill to enforce said lien from time to time as to the court in the exercise of a sound discretion may seem just and equitable." The trust which this Court directed to be inserted in a deed is almost the same as that created by this deed to Samuel L. Billups. The words added to her support in the deed directed to be made by this Court, that is " in a comfortable manner," renders the trust no more definite than it would be without them. For what is " a comfortable manner of living " depends entirely upon the style in which the person has been accustomed to live; and whether these words were added or not, either deed must be considered as imposing a trust to furnish a support suitable to the condition in life of the party to be supported.

In the case of *McCartney et ux.* v. *Bolyard et ux.*, 22 W. Va. 641, a revocation of a deed, in which was a promise to support and maintain the plaintiffs in their dwelling-house on the farm conveyed, was asked and refused, the allegations of the bill not being sustained; but this Court gave no intimation, that the trust was void for uncertainty.

It is claimed in the case before us, that the trust imposed on Billups was to support Hiram W. Johnson and his wife in a house on this tract of one hundred and twenty-five acres conveyed to him. There is nothing of the sort to be found in the deed to Billups, which created this express trust. Though in the original deed made in 1848 by H. W. Johnson of the entire tract of land it was provided, that H. W. Johnson and his wife were to live in their residence on this farm, that is, as I suppose, if they chose so to do. But whatever be its meaning, this provision was not inserted in the deed to the defendant Billups, which contains the express trust sought to be enforced in this suit. In fact there is no evidence to show, that this residence was on the one hundred and twenty-five acres sold and conveyed to Billups. This might perhaps be inferred from the answer of Billups; but it

was replied to generally, and there was no evidence to support this implied allegation. Nor is there any evidence to show when Hiram W. Johnson and his wife left this residence. Jane Johnson, the wife, died January 1871, and her husband Hiram W. Johnson in March or April 1875. At the death of Jane Johnson according to the commissioner's report there was due of the one half of the support, which should have been furnished by the defendant Billups to Hiram W. Johnson and wife, five hundred and sixty-six dollars and sixty-six cents; and of the one half of the support, which should have been furnished by him to Hiram W. Johnson after his wife's death there was at the time of the commissioner's report, March 1, 1875, probably but a few days or weeks before the death of Hiram W. Johnson, due the sum of one hundred and eighty-seven dollars and eight cents.

The court by its decree of October 27, 1876, decreed that this five hundred and sixty-six dollars and sixty-six cents should be paid to the administrator of Jane Johnson, and the one hundred and eighty-seven dollars and eight cents should be paid to the administrator of Hiram W. Johnson. And each of these amounts was to draw interest from the date of the decree. Both these amounts should have been declared to be liens on this tract of one hundred and twenty-five acres conveyed to the defendant, Billups; but there should have been no personal decree against him, he not having contracted to pay them, but having only taken the land with these sums charged upon it by his deed. The aggregate of these sums (seven hundred and fifty-three dollars and seventy-four cents) should not have borne interest from the date of decree, October 27, 1876; but five hundred and sixty-six dollars and sixty-six cents thereof should have borne interest from the death of Jane Johnson, January 1, 1871, and the residue from March 1, 1875, the date of the report, the commissioner's report having been confirmed and showing that they were due at those dates. The commissioner should have regarded the one half of the support of these old people not paid by Billups as due at the end of each successive year, for which Billups was in default, and should have been charged interest accordingly, which would

have increased the amount due considerably. But as the commissioner did not do so, and there was no exception 'to his report, the court should have decreed as above indicated, which is in accordance with his report.

The only error committed against the appellant was that a personal decree was improperly rendered against him. But it was alleged in the bill and not denied, that he was insolvent and had left the State; and, so far as the proof goes, it rather sustains the allegations at least to the extent that he had long since left the State and was a non-resident. His land according to the evidence is sufficient to pay this lien upon it; and this error of the circuit court does not appear to be one, which would be probably injurious to him. While the error in his favor, which the circuit court committed in fixing the lien on his land at considerably less than it really was, is obviously prejudicial to the appellee, the administrator of Hiram W. Johnson. I am therefore of opinion that though this decree of October 27, 1876, must be reversed and a decree entered according to the preceding views, yet the appellant is not the party substantially prevailing, and therefore, though this decree is reversed, there must be a decree for the costs incurred by the appellees against him the appellant. A decree will be entered in accordance with these views.

REVERSED.